Dello Buono *v.* Dello Buono, Appellant.

Argued June 14, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and MONTGOMERY, JJ. (WATKINS, J., absent).

*Joseph J. Frieri,* with him *Herman Eisenberg,* and *Rocco J. Costanzo,* for appellant.

*Vincent P. Froio,* for appellee.

OPINION BY MONTGOMERY, J., September 16, 1960:

Defendant-wife appeals from a decree awarding her husband an absolute divorce on the grounds of deser-

tion and indignities to his person. The master had recommended dismissal of the complaint.

The appeal is based on certain alleged trial errors and the insufficiency of the evidence to support the decree.

The record consists of 595 typewritten pages of testimony, which we have read completely and re-read since we are required to consider the evidence de novo, pass upon its weight and upon the credibility of the witnesses, and reach an independent conclusion upon the merits. *Rankin v. Rankin,* 181 Pa. Superior Ct. 414, 124 A. 2d 639.

In awarding the husband a divorce and thereby refusing to accept the recommendation of the master, the lower court entirely disregarded, as incredible, the testimony of the wife and all of her witnesses. Since it did not see and hear the witnesses, its action was based solely upon its consideration of the record. Our examination of the same record on the same basis leads us to an opposite conclusion. We are impressed by the logic and reasonableness of the wife's testimony, supported by that of her corroborating witnesses, and also by the fact that she has raised her family and held the devotion and respect of her children; and we are unimpressed by the testimony of the husband, which appears for the most part to consist of bold and reckless statements based entirely upon unfounded suspicion and an arrogant attitude.

As we view the record, the facts are as follows: The parties were married on June 26, 1930, in Italy, at which time the appellant was 20 years of age and a citizen of the United States; and the appellee was 37 years of age and a citizen of Italy. After their marriage they resided in Italy until 1936, during which period it was necessary for her to institute proceedings against him for abuse. While they resided in Italy two

children were born, one in 1931 and another in 1934. Appellant returned to the United States with the two children in 1936 and appellee followed a few months later. Another child was born in the United States in 1938. The family lived together at various addresses in Philadelphia until 1945, when appellant, taking her three children and also their clothes and one half of the household furnishings, left their common abode at 610 Federal Street, Philadelphia. Appellee contends that this was willful and malicious desertion on her part although he did not include the charge of desertion in his complaint when he first filed it in 1950. It was added by amendment on June 25, 1957. The proceeding had remained relatively inactive during that period.[1] Appellant denies the charge of desertion and contends that she was ordered to leave and otherwise given good and reasonable cause for leaving. Although her husband, a barber, was industrious and faithful in the payment of his bills, nevertheless he was penurious in so far as she was concerned and deprived her of the barest necessities for her personal needs. On several occasions she was threatened by him with knives and razors and other dangerous instruments and she was falsely accused of association with other men and ordered to leave the home. Corroboration of these facts was given by her oldest daughter, who at the time of the trial was a married woman and apparently had no particular animosity toward her father. On the other hand, the plaintiff was uncorroborated in his statements that his wife used vulgar and abusive language toward him, that she refused to cook for him, and that she did not even let him sit at the table with the family, all of which was denied by her; and he offers abso-

[1] A long delay in asserting a charge of desertion casts doubt on the good faith of the plaintiff. *Orme v. Orme*, 177 Pa. Superior Ct. 209, 110 A. 2d 870.

lutely no testimony of her association with other men at any time prior to the separation. He did offer certain letters in evidence which in themselves indicate nothing detrimental to the appellant. Several of the letters which he offered were clearly inadmissible since they were never in her possession. The others were supposedly purloined by him from her home during her absence but the possession of same at any time was denied by her. In view of our final conclusions in this matter, we deem it unnecessary to discuss the admissibility of these exhibits.

After the wife departed with the children, the husband made contact with them again within twenty-five days and visited them on occasions thereafter until a reconciliation occurred in the summer of 1948. This reconciliation came about after the appellee had promised to provide a new home; and as a result thereof he did buy a building at 5106 Woodland Avenue in the City of Philadelphia, in which both parties and some of the children have been living since that time. He moved into the building about October of 1948 and used a storeroom therein as his barber shop and a room in the rear thereof as his living quarters. In December of 1948 appellant moved in with the children and occupied an apartment immediately to the rear thereof. There is evidence that we deem credible to the effect that after their reconciliation in June they cohabited on occasions in the quarters he was then using as a barber shop, and thereafter when they both had moved into the newly purchased quarters until she informed him of her pregnancy in January of 1949. The fact of her pregnancy, which resulted in a miscarriage, is substantiated by the records of the Misericordia Hospital showing her admission there on February 26, 1949. Since the record clearly shows that the appellant and the appellee lived in close proximity to each other

where appellee had every occasion and opportunity to have sexual relations with the appellant, in the absence of evidence to the contrary the conclusion is irresistible that the plaintiff was responsible for the defendant's pregnancy. However, there is also the additional evidence of the appellant, corroborated by her daughter, that such cohabitation did in fact occur.

We find no further evidence of merit that could be considered support for any charge of indignities to the person after the reconciliation in 1948. Appellee offered the testimony of one witness, a Mr. Little, that he saw an unidentified man leaving the appellant's apartment at 1:30 a.m. and then of seeing the same person leaving her apartment with the appellant and her son on the way to church on the same morning, which was Easter Sunday. However, the record clearly shows that this man was appellant's brother, who had been visiting there over the Easter week end and who visited there with some regularity at other times. There is also some testimony about a Joe Cilletti, a recent immigrant from Italy and a distant relative, who was visiting there with the brother of the appellant and was being befriended until he could establish himself in this country. Nevertheless, there is absolutely no evidence of misconduct by appellant with him or anyone else. These false charges of improper relations are of the same nature as the charges made concerning improper relations prior to the separation in 1945 with an elderly man, referred to as Uncle "Ugo" or Hugo, who was a collector for a dry cleaning establishment, and of a Louis Fillicetti, a Salvation Army worker, who had supplied clothes to send to Italy during the war period. All are indicative of the bold and reckless attitude of the appellee; they are typical of the manner in which he generally asserted his superiority and falsely charged misconduct on the part of his wife whenever the occasion suited him.

Our conclusion is that the separation in 1945 by the wife and children was compelled by appellee's actions and was therefore justified; and that there is insufficient evidence to support a decree in divorce on the grounds of indignities to his person.

While a divorce action may be sustained upon the testimony of the plaintiff alone when not denied by the defendant, *Arnold v. Arnold,* 167 Pa. Superior Ct. 211, 74 A. 2d 524, or shaken by the testimony of the defendant, *Megoulas v. Megoulas,* 166 Pa. Superior Ct. 510, 72 A. 2d 598, when after careful scrutiny of the testimony it is so shaken, a decree will be refused. *Bruno v. Bruno,* 185 Pa. Superior Ct. 219, 138 A. 2d 301. That is the situation in the present case; and there are no convincing circumstances to compel us to disregard the defendant's evidence as suggested in *Spray v. Spray,* 185 Pa. Superior Ct. 407, 138 A. 2d 189. The testimony of the husband in this case is not direct for the most part, but in those parts in which it is direct, it is denied, contradicted, and shaken by the testimony of the wife and her witnesses. Therefore, the plaintiff has failed to make out a clear and satisfactory case, a case upon which the Court may confidently rest a decree; and since the burden is upon him to produce such clear and satisfactory evidence to establish his case, *Young v. Young,* 192 Pa. Superior Ct. 343, 162 A. 2d 45, the decree of the lower court is reversed and the complaint in divorce is dismissed at the cost of plaintiff-appellee.